Wyatt A. Lison (SBN – 316775)
John P. Worgul (SBN – 259150)
Joseph N. Kravec, Jr.
(*Pro Hac Vice forthcoming)*
Brendan R. Delaney
(*Pro Hac Vice forthcoming)*
Emily R. Rollins
(*Pro Hac Vice forthcoming)*
**FEINSTEIN DOYLE**
**PAYNE & KRAVEC, LLC**
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA 15219-1639
Tel: (412) 281-8400
Fax: (412) 281-1007
Email: wlison@fdpklaw.com
Email: jworgul@fdpklaw.com
Email: jkravec@fdpklaw.com
Email: bdelaney@fdpklaw.com
Email: erollins @fdpklaw.com
***ATTORNEYS FOR PLAINTIFFS***
***AND THE PROPOSED CLASS AND SUBCLASSES***

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL BEHAR CALZADO, on behalf of himself; KIMBERLY WIRTES, on behalf of herself and A.W. and T.W., her minor children; and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>POWERSCHOOL GROUP LLC, a Delaware corporation, POWERSCHOOL HOLDINGS, INC., a Delaware corporation, and DOES 1-100,<br><br>Defendants. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Negligence<br>(2) Constructive Fraud<br>(3) Violations of § 349 of New York's General Business Law<br>(4) Violations of Massachusetts Gen. L. c. 93A. and<br>(5) Violations of Massachusetts Gen. L. c. 93H<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Daniel Behar Calzado, on behalf of himself ("Calzado"); and Kimberly Wirtes on behalf of herself and A.W. and T.W., her minor children ("Wirtes"); by their attorneys, bring this class action on behalf of themselves and on behalf of all others similarly situated ("Class Members") against Defendant PowerSchool Group LLC ("PowerSchool Group"), Defendant PowerSchool Holdings, Inc. ("PowerSchool Holdings"), and other unknown DOE Defendants (collectively all Defendants are referred to as "Defendants" or "PowerSchool"), and allege as follows upon information and belief based on, *inter alia*, the investigation of their counsel:

## I. JURISDICTION

1. This Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and many members of the class, including Plaintiffs, are citizens of states different from Defendants. Specifically, this is a data breach class action on behalf of over 60 million consumers and 9 million teachers from some 6,500 school districts whose personal identifying information ("PII") including dates of birth, names, medical alert information, Social Security numbers ("SSNs"), and other personal information (collectively, "Data") was taken from PowerSchool in a cyber-attack that was first publicly announced by PowerSchool on or around January 7, 2025 ("Data Breach"). https://thehill.com/homenews/5104085-over-60m-kids-data-may-have-been-stolen-what-you-need-to-know/. This Court has personal jurisdiction over the Defendants as their principal place of business is in this Judicial District.

## II. INTRODUCTION

2. PowerSchool bills itself as "the largest U.S. provider of K-12 education technology solutions." https://www.powerschool.com/news/powerschool-acquires-hoonuit/

3. PowerSchool maintains highly sensitive PII for students and educators. It was, or should have been, well aware of the importance of the measures organizations should take to prevent data breaches, including the importance of promptly updating its systems to address vulnerabilities as they become disclosed, and willingly failed to take them.

4. In fact, PowerSchool itself represented to the public, including Plaintiffs, that it would take such efforts to protect PII and prevent data breaches.

5. For example, PowerSchool's privacy policy, found on its website,[1] acknowledged PowerSchool's duty to adequately protect Plaintiffs' and Class Members' PII. Specifically, it states, "PowerSchool places great importance and value on the proper handling of personal data that flows within our product as we provide services to our customers." PowerSchool lists the "Privacy Principles" it uses as a guide to inform its approach to data privacy and protection, and states the following with regard to security: "We seek to protect our customers' personal data from unauthorized access, use, modification, disclosure, loss, or theft by leveraging various reasonable security methods to secure our customers' personal data throughout its processing lifecycle with PowerSchool applications." *Id.*

6. On that same website, PowerSchool states that "Respecting Your Student's Data Privacy is Critical to PowerSchool," that it "processes student education records on behalf of educational institutions while respecting data privacy rights and supporting your education journey," and that it uses "state-of-the-art, and appropriate physical, technical, and administrative security measures to protect the personal data that we process." *Id.* Its website further indicates that it seeks "to protect our customers' personal data from unauthorized access, use, modification, disclosure, loss, or theft by leveraging various reasonable security measures and methods to secure our customers' personal data throughout its processing lifecycle with PowerSchool applications," and that its "overall aim is to ensure the confidentiality, integrity, and availability of our customers' personal data by leveraging technical, organizational, and where appropriate, physical security methods." *Id.*

7. The same website also contains PowerSchool's Global Privacy Statement, which was last updated on October 1, 2024. That Statement indicates that "[w]hether PowerSchool is a collector or processor or your data, PowerSchool is committed to protecting your personal

[1] https://www.powerschool.com/privacy/.

information," and that, "[a]s customers provide PowerSchool with Customer Data to process, PowerSchool makes commercially reasonable efforts to ensure the security of our systems." It also claims that, "PowerSchool employs a variety of physical, administrative, and technological safeguards designed to protect your data against loss, misuse, and unauthorized access or disclosure," and that PowerSchool "complies with privacy laws of the United States with respect to personal information and especially student educational records." *Id.*

8. In fact, PowerSchool memorialized its agreements with school districts to protect the personal data of their students and educators in documents titled, "Student Data Privacy Agreements." PowerSchool appears to have entered into these Student Data Privacy Agreements on a state-by-state basis.[2] For example, the Student Data Privacy Agreement applicable to schools in New York ("NY Student Data Privacy Agreement") provides that PowerSchool "agrees to hold all Confidential Information it Processes incompliance with all applicable provisions of federal, state and local law, including but not limited to FERPA and New York Education Law §2-d and any applicable regulations promulgated thereunder," and that it "understands that the disclosure of Protected Information to persons or agencies not authorized to receive it is a violation of United States federal law and New York state law, which may result in civil and/or criminal penalties under New York State and Federal laws."

9. Additionally, the Student Data Privacy Agreement applicable to schools in Massachusetts ("MA Student Data Privacy Agreement") provides that PowerSchool (along with local education agencies) recognizes "the need to protect personally identifiable student information and other regulated data exchanged between them as required by applicable laws and regulations . . . [as well as] applicable state privacy laws and regulations [.]"

10. PowerSchool has not directly provided information to affected individuals as to how the Data Breach occurred. However, based on publicly available information, the Data Breach

---

[2] A copy of these Student Data Privacy Agreements, including the ones for New York and Massachusetts specifically referenced in this Complaint, can be found at https://www.powerschool.com/wp-content/uploads/PowerSchool-Service-Agreements/Customer_State_DPA_List_March_2024.pdf.

appears to have occurred on December 22, 2024. PowerSchool has indicated that it became aware of the Data Breach on December 28, 2024.

11. PowerSchool failed to adequately safeguard consumers' PII because it lacked or knowingly failed to take reasonable or proper safeguards to maintain security of Plaintiffs' and Class Members' PII. PowerSchool's lack of reasonable security provided a means for unauthorized intruders to access PowerSchool's computer network and take consumers' sensitive PII.

12. Class Members could face a long process to deal with the consequences of PowerSchool's failure to secure their PII, including the filing of fraudulent tax returns, unauthorized loans or credit cards, and variety of other identity frauds. PowerSchool's failure to adequately protect customers' PII has caused, and will continue to cause, substantial harm and injuries to over 70 million affected individuals across the United States.

13. As detailed below, PowerSchool delayed notifying school districts of the Data Breach, and in fact has still not provided direct notification of the breach to those affected, meaning that it did not tell any specific person if their data was taken and, if so, which of their data was taken.

14. With regard to Plaintiff Calzado, who is employed as a teacher, his personal and sensitive information was provided to PowerSchool.

15. With regard to Plaintiff Wirtes, personal and sensitive data regarding her and her minor children was provided to PowerSchool.

16. Armed with the sensitive information obtained through the Data Breach, data thieves can incur fraudulent debts; open new financial or utility accounts in a victim's name; use the victim's information to obtain government benefits; file fraudulent tax return using the victim's information to obtain a tax refund; obtain a driver's license or identification card in the victim's name but with another person's picture; and give false information to police during an arrest, amongst other things.

17. As a result of the Data Breach, Plaintiffs and Class Members (as defined below) are exposed to a heightened and imminent risk of fraud and identity theft and must now closely monitor their financial accounts to guard against identity theft well into the future. As a result, Plaintiffs and Class Members may be faced with fraudulent debt, and incur out-of-pocket costs for, among other

things, obtaining credit reports, credit freezes, or other protective measures to deter and detect identity theft. In fact, both Plaintiffs have recently received emails referencing their personal information in the weeks following the Data Breach. Additionally, Plaintiff Wirtes has faced attempts by unknown persons to open or close accounts in her name.

18. Plaintiffs seek to remedy these harms on behalf of themselves and all similarly-situated individuals whose personal information was accessed during the breach.

19. Plaintiffs seek remedies on behalf of themselves and millions of PowerSchool's customers throughout the United States who had their PII taken due to PowerSchool's failure to secure its computer systems, including but not limited to, restitution, damages, punitive damages, statutory damages, reimbursement of out-of-pocket losses, further credit monitoring services with accompanying identity theft insurance, improved data security, and to compel immediate notice to affected persons advising they are affected by the Data Breach and what of their data was taken.

## III. PARTIES

20. Plaintiff Daniel Behar Calzado is a natural person and a citizen of the State of New York, residing in Rochester, New York in Monroe County. Plaintiff Calzado has been employed by the Rochester City School District ("RCSD") as a music teacher since August 2015.

21. Plaintiff Kimberly Wirtes is a natural person and a citizen of the Commonwealth of Massachusetts, residing with her minor children A.W. and T.W. in Adams, Massachusetts in Berkshire County. Plaintiff Wirtes is the parent and natural guardian of her two minor children, A.W. and T.W., who are enrolled as students in the Hoosac Valley Regional School District.

22. Defendant PowerSchool Group is a Delaware corporation, which is registered as a Foreign Corporation in California, and whose principal address is listed with the State of California as 150 Parkshore Dr., Folsom, CA 95630.

23. Defendant PowerSchool Holdings is a Delaware corporation, which is registered as a Foreign Corporation in California, and whose principal address is listed with the State of California as 150 Parkshore Dr, Folsom, CA 95630.

24. There are also unknown DOE Defendants in this case.

## IV. VENUE

25. Venue is proper within this judicial district pursuant to 28 U.S.C. §1391(b) and (c). Defendants transact business and are found within this District, and a substantial portion of the underlying transactions and events complained of by the enterprise occurred in this District, and, upon reason and belief, affected persons, reside or resided in this District at the material time. Defendants have received substantial compensation from such transactions and business activity in this District.

## V. FACTUAL ALLEGATIONS

26. PowerSchool knew or should have known of the risk that the PII of teachers and students that it maintained can be stolen and of the need to carefully safeguard this information, including the importance of promptly updating its systems to address security vulnerabilities as they become disclosed.

27. According to disclosures on its website, on December 28, 2024, "PowerSchool became aware of a cybersecurity incident involving unauthorized exportation of personal information from certain PowerSchool Student Information System (SIS) environments through one of our community-focused customer support portal, PowerSource." PowerSchool disclosed that, "[f]or involved students and educators, the types of information exfiltrated in the incident may have included one or more of the following: the individual's name, contact information, date of birth, limited medical alert information, Social Security Number (SSN), and other related information."[3]

28. PowerSchool also noted that "[o]n January 7, 2025, we proactively communicated this incident to the PowerSchool SIS customers affected by this incident," and "[o]n January 17, 2025, PowerSchool shared next steps with those same SIS customers." *Id.*

29. PowerSchool has indicated that it "will be offering two years of complimentary identity protection services for all students and educators whose information was involved and will also be offering two years of complimentary credit monitoring services for all adult students and

---

[3] https://www.powerschool.com/security/sis-incident/ (Jan. 17, 2025 update)

educators whose information was involved," and that it was "doing this regardless of whether an individual's Social Security Number was exfiltrated." *Id.*

30. Such services are to be provided by Experian, and "[s]tarting in the next few weeks, PowerSchool will coordinate with Experian to provide notice on behalf of our customers to students (or their parents/guardians if the student is under 18) and educators whose information was exfiltrated from their PowerSchool SIS." *Id.*

31. PowerSchool claims that "[w]e take our responsibility to protect student, family, and educator data privacy extremely seriously, and we are committed to providing customers, families, and educators with resources and support as we work through this together." *Id.*

32. Despite this alleged commitment, and the fact that it claims it is taking steps to remedy the harm from this breach, PowerSchool has yet to provide any direct notification to affected individuals, even though it has been aware of the Data Breach for over a month. In fact, in response to an FAQ asking about "the timeline for providing notification information to schools, educators and families," PowerSchool indicated that as it "is working to complete our investigation, we are also taking steps to set up a system – in coordination with our customers – to be able to provide supportive resources (including credit monitoring or identity protection services if applicable) for individuals whose data may have been involved. As we have more definitive information on our timeline, we will share that accordingly." In response to another FAQ, it disclosed that "[i]f you are a parent or guardian of a student under the age of 18 and your student's information was exfiltrated from their district's PowerSchool SIS, you will receive a notification email from PowerSchool over the next few weeks." *Id.*

33. Plaintiff Calzado's employer, RCSD, provided a notice regarding the Data Breach ("RCSD Notice"), which can be found at https://www.rcsdk12.org/databreach. The RCSD Notice, which was addressed to "Rochester City School District Families and Staff," indicated that the Data Breach "involved unauthorized access to information through a compromised credential on one of PowerSchool's customer support portals" and that "PowerSchool has confirmed that unauthorized access occurred on their PowerSource support portal, exposing user data." The RCSD Notice also indicated that RCSD's technology team "has identified the specific RCSD information that may

have been accessed," which included "Staff information, including First Name, Last Name, assigned school, email address, and New York State TEACH ID number." It further disclosed that, "in the next few weeks, in collaboration with Experian, PowerSchool will provide notice to students (or their parents/guardians, if the student is under 18) and staff whose information was involved and a phone number to answer any questions you may have about the incident." *Id.*

34. On January 8, 2025, Plaintiff Wirtes received an email from an official at the Hoosac Valley Regional School District ("January 8 Email"), in which her minor children A.W. and T.W. are enrolled. That email, a copy of which is attached as **Exhibit A** indicated that, on "January 7th, our district, along with thousands of others globally, was informed of a cybersecurity breach that occurred in December," and that "[t]his breach affects PowerSchool, the provider of our student information system." The email further disclosed that, "[w]hile details about the breach are still limited, our Technology Director has confirmed that both student and staff data has been compromised. This data breach is limited and consists primarily of demographic data." *Id.*

35. The January 8 Email linked to a notification which PowerSchool had provided to the Hoosac Valley Regional School District, a copy of which is attached as **Exhibit B.** That notification stated that PowerSchool was "reaching out to inform you that on December 28, 2024, PowerSchool become aware of a potential cybersecurity incident involving unauthorized access to certain information through one of our community-focused customer support portals, PowerSource." It further stated that, "Over the succeeding days, our investigation determined that an unauthorized party gained access to certain PowerSchool Student Information System …customer data using a compromised credential, and we regret to inform you that your data was accessed." *Id.*

36. On January 10, 2025, the Hoosac Valley Regional School District sent another email to Ms. Wirtes, a copy of which is attached as **Exhibit C**, which stated that, "PowerSchool informed us that the taken data primarily includes parent and student contact information with data elements such as name and address information" and that PowerSchool had "confirmed that the information belongs to some of HVRSD's families and educators."

37. That email also linked to another document provided by the Hoosac Valley Regional School District ("Hoosac Valley Document"), a copy of which is attached as **Exhibit D.** The

Hoosac Valley Document disclosed that, on January 7, 2025, "our district, along with thousands of others globally, was informed of a cybersecurity breach that occurred in December. This breach affects PowerSchool, the provider of our student information system," and that PowerSchool was "the largest provider of cloud-based education software for K-12 education in the U.S." The Hoosac Valley Document further noted that "our Technology Director has confirmed that both student and staff data has been compromised," and that "[t]his data breach is limited and consists primarily of demographic data." Finally, it noted that, "We share your concern over this breach, **especially given the delayed notification from PowerSchool."** (emphasis added).

38. The Hoosac Valley Document provided a timeline of the Data Breach, indicating that "Unauthorized access to our district's data occurred on December 22, 2024, at 6:35 a.m. and again at 8:58 p.m."; that "PowerSchool became aware of the breach on December 28, 2024, when the attackers contacted them with an extortion demand in exchange for destroying the stolen data;" but that PowerSchool first "notified the District of the breach on January 7, 2025, at approximately 2:00 p.m., via email." It also stated that "PowerSchool confirmed that they paid the attackers an undisclosed amount in exchange for a video showing the electronic destruction of the stolen data."

39. Despite PowerSchool's own promises to maintain data security, as well as the critical nature of maintaining the security of individuals' PII, PowerSchool did not take reasonable or appropriate steps to secure the PII.

40. PowerSchool also did not disclose to anyone that it did not have adequate security systems in place to keep Plaintiffs' and other customers' personal, financial and health information that PowerSchool maintained on its computer systems private and secure.

41. Due to PowerSchool's failure to maintain the privacy and security of Plaintiffs' and Class Members' private personal, financial and health information, PowerSchool has violated the law and breached its duties to its customers.

## VI. CLASS ACTION ALLEGATIONS

42. Plaintiffs bring this action seeking certification of the Classes, defined below, (collectively, "Classes"). This action asserts claims on behalf of a nationwide class, and New York and Massachusetts subclasses pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2),

(b)(3), and (c)(4), which class and subclasses consist of persons who had their data stolen from PowerSchool's systems as follows:

> All persons in the United States whose personal or financial information was compromised by the data breach disclosed by PowerSchool on January 7, 2025 (the "National Class").
>
> All persons in New York whose personal or financial information was compromised by the data breach disclosed by PowerSchool on January 7, 2025 (the "New York Subclass").
>
> All persons in Massachusetts whose personal or financial information was compromised by the data breach disclosed by PowerSchool on January 7, 2025 (the "Massachusetts Subclass").

43. Excluded from each of the class and subclasses are: (i) Defendants, their affiliated entities, and their employees, directors, principals, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

44. Plaintiffs reserve the right to modify or amend the definitions of any or all of the National Class and New York and Massachusetts Subclasses, including limiting them to multistate or statewide only, upon completion of discovery.

45. There are at least thousands, if not millions, of members in each of the National Class and New York and Massachusetts Subclasses who are geographically dispersed throughout New York, Massachusetts, and the United States. Therefore, individual joinder of the members of any of the classes defined above would be impracticable.

46. Common questions of law or fact exist as to all members of the National Class and New York and Massachusetts Subclasses. Plaintiffs' claims raise questions of law and fact common to all members of the National Class and New York and Massachusetts Subclasses, within the meaning of Fed. R. Civ. P. 23(a)(2), and they predominate over any questions affecting only individual members of the National Class and New York and Massachusetts Subclasses within the meaning of Rule 23(b)(3). The central issues in this litigation turn on interpretation of identical or materially similar privacy policy provisions, privacy and data breach duties imposed by law, common data storage and protection practices resulting in the data breach and a data breach affecting all members of the National Class and New York and Massachusetts Subclasses by exposing their private, personal data to third parties. These predominant common legal or factual questions include:

a. Whether PowerSchool engaged in the wrongful conduct alleged

herein;

b. Whether PowerSchool's conduct was deceptive, unfair, unconscionable and/or unlawful;

c. Whether PowerSchool owed a duty to Plaintiffs and members of the National Class and/or New York and Massachusetts Subclasses to protect their PII;

d. Whether PowerSchool breached its duty owed to Plaintiffs and members of the National Class and/or New York and Massachusetts Subclasses to protect their PII;

e. Whether PowerSchool owed a duty to Plaintiffs and members of the National Class and/or New York and Massachusetts Subclasses to timely and accurately provide notice of PowerSchool's Data Breach;

f. Whether PowerSchool breached its duty owed to Plaintiffs and members of the National Class and/or New York and Massachusetts Subclasses to timely or accurately provide notice of PowerSchool's Data Breach;

g. Whether PowerSchool knew or should have known that its computer systems were vulnerable to attack;

h. Whether PowerSchool had a duty to and took reasonable and adequate steps to ensure the security of the National Class' and/or New York and Massachusetts Subclasses' PII;

i. Whether PowerSchool breached its duty to take reasonable and adequate steps to ensure the security of the National Class' and/or New York and Massachusetts Subclasses' PII;

j. Whether PowerSchool had a duty to encrypt Plaintiffs' and members of the National Class' and/or New York and Massachusetts Subclasses' PII;

k. Whether PowerSchool breached its duty to encrypt Plaintiffs' and members of the National Class' and/or New York and Massachusetts Subclasses' PII;

l. Whether Plaintiffs and members of the National Class and New York and Massachusetts Subclasses suffered injury as a result of PowerSchool's conduct or failure to act; and

m. Whether Plaintiffs and members of the National Class and New York and Massachusetts Subclasses are entitled to damages, restitution and/or equitable relief, including notice.

47. Plaintiffs' claims are typical of the claims of the National Class and New York and Massachusetts Subclasses. Plaintiff Calzado is a teacher at a school district whose PII has been compromised, and Plaintiff Wirtes is a parent whose PII, and that of her minor children, have been compromised, by the Data Breach announced by PowerSchool on January 7, 2025. Therefore, Plaintiffs are no different in any material respect from any other members of the National Class or New York and Massachusetts Subclasses, and the relief sought by Plaintiffs are common to the relief sought by the class and subclass.

48. Plaintiff Calzado is an adequate representative of the National Class and New York Subclass because his interests do not conflict with the interests of the class or subclass members he seeks to represent, and Plaintiff Wirtes is an adequate representative of the National Class and Massachusetts Subclass because her interests do not conflict with the interests of the class or subclass members she seeks to represent. Furthermore, Plaintiffs have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the National Class and New York and Massachusetts Subclasses.

49. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual member of the National Class and New York and Massachusetts Subclasses are relatively small, while the burden and monetary expense needed to individually prosecute this case against Defendants is substantial. Thus, it would be virtually impossible for class and subclass members individually to redress effectively the wrongs done to them. Moreover, even if members of the class and subclasses defined herein could afford individual actions, a multitude of such individual actions still would not be preferable to class wide litigation. Individual actions also present the potential for inconsistent or contradictory judgments,

which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the class.

50. By contrast, a class action presents far fewer litigation management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Also, or in the alternative, the National Class and New York and Massachusetts Subclasses may be certified because Defendants have acted or refused to act on grounds generally applicable to each of the respective class and subclass, thereby making preliminary and final declaratory relief appropriate.

51. In the alternative, the National Class and New York and Massachusetts Subclasses may be certified pursuant to Fed. R. Civ. P. 23(b)(2) because adjudications with respect to individual class members would as a practical matter be dispositive of the other members of the National Class and New York and Massachusetts Subclasses given that their claims all emanate from a common data breach. Further, the National Class and New York and Massachusetts Subclasses alternatively may be certified under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions under these circumstances risks inconsistent or varying adjudications that could create incompatible standards of conduct for Defendants to follow, and/or adjudications for individual members of the Classes that could be dispositive of unnamed class members' claims and may substantially impair or impede their ability to protect their interests. Also, in the alternative, the National Class and New York and Massachusetts Subclasses may be certified with respect to particular issues pursuant to Fed.R.Civ.P. 23(c)(4).

52. All records concerning PowerSchool's Data Breach, including records sufficient to identify members of the National Class and New York and Massachusetts Subclasses, are in the possession and control of PowerSchool and its agents and are available through discovery.

//

//

//

//

## VII. CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Negligence (on Behalf of Plaintiffs and the Classes against Defendants)**

53. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

54. PowerSchool owed a duty to Plaintiffs and the Members of the Classes, arising from the sensitivity of the information and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their PII. This duty included, among other things, designing, maintaining, monitoring, and testing PowerSchool's security systems, protocols, and practices to ensure that Plaintiffs' and the Members of the Classes' information was adequately secured from unauthorized access. This duty also included, at the minimum, that Plaintiffs' and the Members of the Classes' PII be maintained in encrypted form.

55. For example, PowerSchool's privacy policy[4], found on its website, acknowledged PowerSchool's duty to adequately protect Plaintiffs' and the Members of the Classes' PII. Specifically, it states, "PowerSchool places great importance and value on the proper handling of personal data that flows within our product as we provide services to our customers." PowerSchool lists the "Privacy Principles" it uses as a guide to inform its approach to data privacy and protection, and states the following with regard to security: "We seek to protect our customers' personal data from unauthorized access, use, modification, disclosure, loss, or theft by leveraging various reasonable security methods to secure our customers' personal data throughout its processing lifecycle with PowerSchool applications." *Id.*

56. That website further states that "Respecting Your Student's Data Privacy is Critical to PowerSchool," that it "processes student education records on behalf of educational institutions while respecting data privacy rights and supporting your education journey," and that it uses "state-of-the-art, and appropriate physical, technical, and administrative security measures to protect the personal data that we process." Its website further indicates that it seeks "to protect our customers'

---

[4] https://www.powerschool.com/privacy/.

personal data from unauthorized access, use, modification, disclosure, loss, or theft by leveraging various reasonable security measures and methods to secure our customers' personal data throughout its processing lifecycle with PowerSchool applications," and that its "overall aim is to ensure the confidentiality, integrity, and availability of our customers' personal data by leveraging technical, organizational, and where appropriate, physical security methods." *Id.* Finally, it states that PowerSchool uses "personal data in a legal and non-harmful way while respecting your rights and considering your interests. Personal data is processed fairly and reasonably by PowerSchool," clarifying that "reasonably," means "processing all personal data in ways that our customers knowingly expect and not processing in ways unexpected or unauthorized by our customers - schools and school districts." *Id.*

57. Also on that website is PowerSchool's Global Privacy Statement, which was last updated on October 1, 2024. That Statement indicates that "[w]hether PowerSchool is a collector or processor or your data, PowerSchool is committed to protecting your personal information," that it uses "commercially reasonable physical, administrative, and technical safeguards to preserve the confidentiality, integrity, and availability of your personal information," and that, "[a]s customers provide PowerSchool with Customer Data to process, PowerSchool makes commercially reasonable efforts to ensure the security of our systems." It also claims that "PowerSchool employs a variety of physical, administrative, and technological safeguards designed to protect your data against loss, misuse, and unauthorized access or disclosure," and that it "employs a variety of physical, administrative, and technological safeguards designed to protect your data against loss, misuse, and unauthorized access or disclosure." It further claims that PowerSchool "complies with privacy laws of the United States with respect to personal information and especially student educational records" and "does not use or disclose Customer Data except as authorized and required by our customers and as provided for in our agreements with our customers." *Id.* Finally, it states that it does not "use Student Data for any purpose other than to provide the services, in accordance with our contractual agreements with our Customers, our Terms of Service, and this Privacy Policy." *Id.*

58. PowerSchool's student data privacy agreements acknowledged PowerSchool's duty to protect Plaintiffs' and Class Members' PII. Specifically, the NY Student Data Privacy Agreement

provides that PowerSchool "agrees to hold all Confidential Information it Processes incompliance with all applicable provisions of federal, state and local law, including but not limited to FERPA and New York Education Law §2-d and any applicable regulations promulgated thereunder," and that it "understands that the disclosure of Protected Information to persons or agencies not authorized to receive it is a violation of United States federal law and New York state law, which may result in civil and/or criminal penalties under New York State and Federal laws." Additionally, the MA Student Data Privacy Agreement states, "the Provider [("PowerSchools")] and LEA [("Local Education Agency")] recognize the need to protect personally identifiable student information and other regulated data exchanged between them as required by applicable laws and regulations . . . [as well as] applicable state privacy laws and regulations[.]" PowerSchool has a similar agreements undertaking similar duties of privacy and data protection in each state it operates. *See* https://www.powerschool.com/wp-content/uploads/PowerSchool-Service-Agreements/Customer_State_DPA_List_March_2024.pdf.

59. PowerSchool owed a duty to Plaintiffs and National Class members to implement intrusion detection processes that would detect a data breach in a timely manner, and to act upon any warnings or alerts that its security systems were breached.

60. PowerSchool owed a duty to Plaintiffs and National Class members to timely disclose any breach of its security systems.

61. PowerSchool also had a duty to delete any PII that was no longer needed to serve client needs.

62. PowerSchool owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiffs' and the Members of the Classes' PII.

63. PowerSchool also had independent duties under Plaintiffs' and the Members of the Classes' state laws that required PowerSchool to reasonably safeguard Plaintiffs' and the Members of the Classes' PII and promptly notify them about the Data Breach.

64. PowerSchool had a special relationship with Plaintiffs and the Members of the Classes from being entrusted with their PII, which provided an independent duty of care. Plaintiffs' and other of the Members of the Classes' willingness to entrust PowerSchool with their PII was

predicated on the understanding that PowerSchool would take adequate security precautions. Moreover, PowerSchool had the ability to protect its systems and the PII it stored on them from attack.

65. PowerSchool's role to utilize and purportedly safeguard Plaintiffs' and the Members of the Classes' PII presents unique circumstances requiring a reallocation of risk.

66. PowerSchool breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiffs' and the Members of the Classes' PII; (b) failing to implement processes to detect a breach of its security systems in a timely manner, and to act upon any warnings or alerts that PowerSchool's security systems were breached; (c) failing to detect the Data Breach in a timely manner; and (d) failing to disclose that Defendants' data security practices were inadequate to safeguard Plaintiffs' and the Members of the Classes' PII.

67. PowerSchool also breached its duties by failing to provide adequate and timely notice of the breach, and in fact has still failed to provide individual notice of the breach despite the fact that it has been aware of the breach for over a month.

68. But for PowerSchool's breach of its duties, Plaintiffs' and the Members of the Classes' PII would not have been accessed by unauthorized individuals.

69. Plaintiffs and the Members of the Classes were foreseeable victims of PowerSchool's inadequate data security practices. PowerSchool knew or should have known that a breach of its data security systems would cause damages to Plaintiffs and the Members of the Classes.

70. PowerSchool's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and the Members of the Classes' PII.

71. As a result of PowerSchool's willful failure to prevent the Data Breach, Plaintiffs and the Members of the Classes suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and the Members of the Classes must more closely monitor their financial accounts and credit histories to guard against identity theft. Plaintiffs and the Members of the Classes also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized

acquisition of Plaintiffs' and the Members of the Classes' PII has also diminished the value of the PII.

72. The damages to Plaintiffs and the Members of the Classes were a proximate, reasonably foreseeable result of PowerSchool's breaches of its duties.

73. Therefore, Plaintiffs and the Members of the Classes are entitled to damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**Constructive Fraud (on Behalf of Plaintiffs and the Classes against Defendants)**

74. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

75. PowerSchool owed a duty to Plaintiffs and the Members of the Classes to adequately protect their PII under various state and federal laws and regulations.

76. Specifically, as an entity to whom Plaintiffs' and the Members of the Classes' most intimate, sensitive and private personal information and PII was provided, PowerSchool enjoyed a special relationship of trust and confidence with Plaintiffs and the Members of the Classes and owed them a heightened duty above and beyond normal commercial relations. Accordingly, Plaintiffs and the Members of the Classes reasonably expected PowerSchool would adhere to its obligations to adequately protect the sensitive, personal information they provided including the PII PowerSchool allowed to be stolen.

77. PowerSchool breached this duty by failing to maintain security adequate to protect Plaintiffs' and the Members of the Classes' PII, and by failing to timely and adequately notify them of the breach.

78. As a result of PowerSchool's conduct, Plaintiffs and the Members of the Classes are entitled to damages and equitable relief.

**THIRD CAUSE OF ACTION**
**Violations of § 349 of New York's General Business Law ("GBL") (on Behalf of Plaintiff Calzado and the New York Subclass against Defendants)**

79. Plaintiff Calzado hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

80. This count is brought on behalf of Plaintiff Calzado and the New York Subclass members.

81. GBL § 349(a) provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

82. In violation of GBL § 349, Plaintiff Calzado and members of the New York Subclass were subjected to Defendants' unfair or deceptive acts or practices by failing to properly implement adequate security measures that comport with industry standards to protect the PII.

83. Defendants willfully ignored the readily apparent risk of a security breach of its data systems and failed to create, implement, and maintain reasonable security measures to prevent, detect, and mitigate the Data Breach.

84. Defendants' failure to create, implement, and maintain reasonable security measures was the direct and proximate cause, and continuing cause, of substantial injury to Plaintiff Calzado and New York Subclass members.

85. Defendants' acts and omissions are and were against public policy and are and were unethical, deceptive, unfair, and oppressive. Furthermore, they caused and will continue to cause substantial injury to consumers, including Plaintiff Calzado and the New York Subclass members.

86. As a direct result of Defendants' conduct described in this Complaint, Plaintiff Calzado and members of the New York Subclass have suffered actual and ascertainable losses, including improper disclosure of PII, loss in value of their PII, time and money lost due to taking efforts to mitigate and remediate the effects of the Data Breach, including but not limited to the increased and imminent threat of identity theft that resulted and that Plaintiff Calzado and New York Subclass members continue to face.

87. As a proximate and direct result of Defendants' failure to create, implement, and maintain security protocols that comport with industry standards, Plaintiff Calzado and members of the New York Subclass have been placed at immediate and substantial risk of harm of their PII being exploited and their privacy being invaded by unauthorized third parties.

88. The injuries suffered by Plaintiff Calzado and New York Subclass members were directly and proximately caused by Defendants' violations of GBL § 349, and Defendants' actions were carried out with such reckless indifference toward the rights of Plaintiff Calzado and New York Subclass members that an award of punitive and/or treble damages is appropriate.

89. Accordingly, as authorized by GBL § 349(h), Plaintiff Calzado, on behalf of himself and other members of the New York Subclass, seeks to recover actual damages of $50.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Violations of Massachusetts Gen. L. c. 93A. (on Behalf of Plaintiff Wirtes and the Massachusetts Subclass against Defendants)**

90. Plaintiff Wirtes hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

91. This count is brought on behalf of Plaintiff Wirtes and Massachusetts Subclass members.

92. PowerSchool engages in "trade" and/ or "commerce" as those terms are defined in within Mass. Gen. L. c. 93A.

93. During its operations in Massachusetts, PowerSchool engaged in unfair methods of competition and/or deceptive acts or practices in the conduct of any trade or commerce, and in doing so violated Section 2(a) of Mass. Gen. L. c. 93A.

94. Such conduct included PowerSchool's failure to adequately protect the PII of Plaintiff Wirtes, her minor children, and the Massachusetts Subclass members from unauthorized disclosure, release, data breach, and theft; it knowingly and fraudulently misrepresented that it would maintain adequate protections and safeguards to protect the PII of Massachusetts Subclass members; and it failed to disclose its inadequate security in protecting the PII.

95. PowerSchool additionally knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws, including but not limited to, the data breach notification requirements found at Mass. Gen. L. c. 93H and its regulations at 201 C.M.R. 17.00 *et seq.*, and the Massachusetts Right of Privacy statute, Mass. Gen. L. c. 214, § 1B. Its failure

to protect Massachusetts Subclass members' PII violated those and other applicable laws and regulations.

96. As a proximate and direct result of Defendants' failure to create, implement, and maintain security protocols that comport with industry standards, and as a proximate and direct result of PowerSchool's failure to provide notice of the Data Breach as soon as practicable and without unreasonable delay, Plaintiff Wirtes and members of the Massachusetts Subclass have been placed at immediate and substantial risk of harm of their PII being exploited and their privacy being invaded by unauthorized third parties and face increased time and expenses related to the monitoring of their financial accounts and personal information.

97. The harm caused by PowerSchool's wrongful conduct outweighs any utility of such conduct, and such conduct (i) offends public policy, (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused and will continue to cause substantial injury to consumers such as Plaintiff Wirtes and Subclass members.

98. Defendants knew or should have known that their data security practices and protections were inadequate to effectively safeguard the PII of the Massachusetts Subclass members and that the risk of a data breach or theft was highly likely. Their actions in engaging in the above-mentioned practices and deceptive acts were therefore negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Massachusetts Subclass members.

99. The written demand for relief, provided for in Section 9(3) of Mass. Gen. L. c. 93A is not necessary, and need not be provided, given that Defendants have had many suits filed against them related to the Data Breach, since they disclosed the breach on January 7, 2025. Furthermore, it is the Defendants, and not Plaintiff Wirtes, who have the most knowledge regarding the Data Breach itself, making the rationale for the written demand for relief moot. It is also uncertain whether PowerSchool maintains a place of business or keeps assets in Massachusetts, in which case the written demand for relief would not be required under Section 9(3).

100. Plaintiff Wirtes, on behalf of herself and other members of the Massachusetts Subclass, seeks relief pursuant to § 9 of Mass. Gen. L. c. 93A, including actual damages, double or treble damages and equitable relief (including injunctive relief), attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**Violations of Massachusetts Gen. L. c. 214 1B (on Behalf of Plaintiff Wirtes and the Massachusetts Subclass against Defendants)**

101. Plaintiff Wirtes hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

102. This count is brought on behalf of Plaintiff Wirtes and the Massachusetts Subclass.

103. PowerSchool had a legal duty to protect against, monitor, and detect breaches of the Plaintiff Wirtes and Massachusetts Subclass members' PII.

104. PowerSchool had a legal duty to create, implement, and maintain security protocols for the protection of the Plaintiff Wirtes' and Massachusetts Subclass members' PII that comport with industry standards.

105. PowerSchool had a legal duty to ensure that Plaintiff Wirtes and Massachusetts Subclass members' PII was not stolen, disclosed to third-parties, and/or made public.

106. PowerSchool failed to create, implement, and maintain security protocols for the protection of Plaintiff Wirtes and Massachusetts Subclass members' PII that comport with industry standards, and as a result, Plaintiff Wirtes and Massachusetts Subclass members' PII was accessed in an unauthorized manner and distributed to unauthorized third-parties while in the custody of PowerSchool.

107. PowerSchool failed to adequately protect the Massachusetts Subclass members' PII.

108. PowerSchool's failure to adequately protect Plaintiff Wirtes' and Massachusetts Subclass members' PII led to an unreasonable, substantial, and serious interference of Plaintiff Wirtes' and Massachusetts' Subclass members' interest in privacy.

109. The acts and omissions described above constitute a violation of § 1B of Mass. Gen. L. c. 214.

110. The acts and omissions of PowerSchool have exposed Plaintiff Wirtes and members of the Massachusetts Subclass to an immediate and substantial risk of harm of their PII being exploited and their privacy being invaded by unauthorized third parties and face increased time and expenses related to the monitoring of their financial accounts and personal information.

111. Plaintiff Wirtes, on behalf of herself and other members of the Massachusetts Subclass, seeks relief pursuant to § 1B of Mass. Gen. L. c. 214, including actual damages.

## VIII. PRAYER

WHEREFORE, Plaintiffs Wirtes and Calzado, on behalf of all members of the National Class, New York Subclass and Massachusetts Subclass, request that the Court order the following relief and enter judgment against PowerSchool as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs Daniel Behar Calzado and Kimberly Wirtes be appointed Class Representatives for the National Class, that Plaintiff Calzado be appointed Class Representative for the New York Subclass, that Plaintiff Wirtes be appointed Class Representative for the Massachusetts Subclass, and that Plaintiffs' counsel be appointed Counsel for the National Class, New York Subclass and Massachusetts Subclass.

B. Injunctive relief requiring Defendants to (1) strengthen their data security systems that maintain PII to comply with applicable federal and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendants' systems on a periodic basis; (3) promptly correct any problems or issues detected by such audits and testing; (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond, and (5) provide notice of the data breach specifying what data was accessed;

C. An order requiring Defendants to pay all costs associated with Class notice and administration of Class-wide relief;

D. An award to Plaintiffs and all National Class Members (and New York Subclass and Massachusetts Subclass members) of compensatory, consequential, incidental, statutory and punitive damages, restitution, and disgorgement, in an amount to be determined at trial;

E. An award to Plaintiffs and all National Class Members (and New York and Massachusetts Subclass members) of additional credit monitoring and identity theft protection services beyond any package PowerSchool is currently offering;

F. An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G. An order Requiring Defendants to pay pre-judgment and post-judgment interest, as provided by law or equity; and

H. Such other or further relief as the Court may allow.

## IX. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and/or issues so triable.

DATED: February 11, 2025

Respectfully Submitted,

/s/Wyatt A. Lison

Wyatt A. Lison (SBN – 316775)

John P. Worgul (SBN –259150)
Joseph N. Kravec, Jr.
(*Pro Hac Vice forthcoming)*
Brendan R. Delaney
(*Pro Hac Vice forthcoming)*
Emily R. Rollins
(*Pro Hac Vice forthcoming)*
**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA 15219-1639
Tel: (412) 281-8400
Fax: (412) 281-1007
Email: wlison@fdpklaw.com
Email: jworgul@fdpklaw.com
Email: jkravec@fdpklaw.com
Email: bdelaney@fdpklaw.com
Email: erollins @fdpklaw.com

***ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS AND SUBCLASSES***